1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  HILLARY T. IRVIN (MDBN 1712130257)

5  Assistant United States Attorney

6  450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
7  Telephone: (415) 436-7181
   Fax: (415) 436-7027
8  Hillary.Irvin@usdoj.gov

9  Attorneys for United States of America

**FILED**

Aug 02 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-mj-71161 MAG |
| Plaintiff, | NOTICE OF PROCEEDINGS ON OUT-OF-DISTRICT CRIMINAL CHARGES PURSUANT TO RULES 5(c)(2) AND (3) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |
| v. | |
| ZHENDI WANG, | |
| Defendant. | |

Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure that on August 2, 2023, the above-named defendant was arrested pursuant to an arrest warrant (copy attached) issued upon a:

☐   Indictment

☐   Information

X   Criminal Complaint

☐   Other (describe)

pending in the District of Massachusetts, Case Number 23-MJ-7350-JCB.

In that case (copy of Criminal Complaint attached), the defendant is charged with a violation of

v. 7/10/2018

18 U.S.C. § 1956(h), money laundering.

    The maximum penalties are as follows:

        20 years' imprisonment; three years of supervised release; $500,000 fine or twice the value of the funds laundered, whichever is greater; $100 special assessment; Restitution; Forfeiture; Deportation.

        Respectfully Submitted,

        ISMAIL J. RAMSEY
        UNITED STATES ATTORNEY

Date: August 2, 2023     /s/_____
        HILLARY IRVIN
        Assistant United States Attorney

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| ZHENDI WANG | ) | 23-MJ-7350-JCB |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **at least June 2019 to present** in the county of **Suffolk** in the
**__** District of **Massachusetts**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956(h) | Money laundering conspiracy |

This criminal complaint is based on these facts:

See attached Affidavit of DEA TFO Amie Le

☑ Continued on the attached sheet.

*Amie N Le*
Complainant's signature

Amie Le, DEA Task Force Officer
Printed name and title

Subscribed and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1.

Date: **1:12 AM, Aug 2, 2023**

City and state: Boston, Massachusetts

*J. C. Boal*
Judge's signature

Hon. Jennifer C. Boal, U.S. Magistrate Judge
Printed name and title

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | |
|---|---|
| United States of America<br>v.<br>Zhendi Wang<br><br>*Defendant* | ) ) ) ) ) ) )  Case No.  23-MJ-7350-JCB |

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   Zhendi Wang                                ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☑ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

   18 U.S.C. § 1956(h), money laundering conspiracy

Date:  1:13 AM, Aug 2, 2023

*Issuing officer's signature*

City and state:   Boston, Massachusetts

Hon. Jennifer C. Boal, US Magistrate Judge
*Printed name and title*

| **Return** |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____<br>at *(city and state)* _____.<br><br>Date: _____<br><br>*Arresting officer's signature*<br><br>*Printed name and title* |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Amie Le, being sworn, state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. I am employed by the Suffolk County Sheriff's Department, where I have worked since 2012. I currently hold the position of Deputy Sheriff. Since 2020, I have been a Task Force Officer ("TFO") with the New England Division of the Drug Enforcement Administration ("DEA"). Specifically, I am presently assigned to the Boston Tactical Diversion Squad ("TDS"), which is comprised of local, state, and federal law enforcement agencies that conducts multijurisdictional state and federal drug investigations in an attempt to identify and dismantle Drug Trafficking Organizations ("DTOs") that distribute throughout the District of Massachusetts and neighboring districts. Many of these investigations focus on the illegal diversion of pharmaceuticals.

3. My responsibilities as a DEA Task Force Officer include the investigation of possible violations of federal law, including violations of federal narcotics laws in Title 21 of the United States Code and federal money laundering statutes in violation of laws in Title 18 of the United States Code. As a Task Force Officer, I have participated in the investigations of criminal organizations involved in the distribution of controlled substances and related money laundering violations. A number of those investigations resulted in arrests, indictments, and convictions for violations of drug laws and/or other criminal offenses, the seizure of drugs, money, and vehicles and the forfeiture of personal property. I have participated in all aspects of drug investigations,

including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, acting in an undercover capacity, making arrests, and debriefing defendants, informants and witnesses who had personal knowledge about major drug trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. I have also received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotic traffickers to conceal and launder the proceeds of their narcotics-trafficking activities.

4. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, state, national and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Based on my training and experience, I understand that illegal drug trafficking often involves the local, interstate, and international movement of drugs to distributors and co-conspirators at multiple levels, and the movement of the proceeds of drug trafficking among multiple participants, including suppliers, customers, distributors, and money launderers.

5. I make this affidavit based upon personal knowledge derived from my participation in this investigation and based upon information (whether received directly or indirectly) that I believe to be reliable from numerous sources, including, but not limited to, statements and information from witnesses and confidential sources, my personal knowledge, and observations during the course of this investigation, my personal training and experience as a

2

criminal investigator, drug and money seizures, judicially authorized warrants for GPS trackers, precise location information and seizures of assets, and my review (and the review by my colleagues) of public, business and bank records, documents and other physical evidence obtained during this investigation.

## Purpose of the Affidavit

6.  I submit this affidavit in support of a criminal complaint against ZHENDI Wang ("ZHENDI"), charging that beginning at least in or about June 2019 and continuing to the present, the defendant did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown, to launder money, in violation of 18 U.S.C. § 1956(h).

7.  This affidavit does not set forth all the facts developed during the course of this investigation nor does it set forth all information known to me and investigators about this matter. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that ZHENDI has conspired to launder money.

## Probable Cause

8.  Since at least as early as January 2023, agents assigned to DEA TDS along with investigators assigned to Homeland Security Investigations ("HSI") Border Enforcement Security Task Force ("BEST") and the United States Postal Inspection Services ("USPIS") have been investigating ZHENDI, and two other co-conspirators (hereinafter, Co-Conspirator #1 and Co-Conspirator #2, respectively, collectively: "Co-Conspirators")[1] for money laundering conspiracy. The money laundering investigation stemmed from an underlying investigation, initiated in approximately March 2022, concerning an international importation and distribution conspiracy

---

[1] The identities of the Co-conspirators are known to law enforcement but because of the ongoing nature of this investigation, they are not being named in this affidavit at this time.

involving illegal steroids from China, manufactured pills containing anabolic steroids, and distribution of steroids in Massachusetts.

9. Investigators identified three financial accounts opened by ZHENDI of which ZHENDI is listed as the sole authorized signor. Two accounts, a checking, and a savings, are maintained at a bank which is FDIC insured and with branches located in Massachusetts ("Bank A"). A third account is an investment account (hereinafter, "ZHENDI Investment Account") that partners with Bank A to provide wealth management services with Bank A. ZHENDI is the sole authorized signor on ZHENDI Investment Account as well.

10. On June 5, 2019, ZHENDI opened his checking and savings accounts at a Boston, Massachusetts branch of Bank A. According to account opening information, for the checking and savings accounts at Bank A, ZHENDI indicated his occupation was a doctor at Wuhan Union Hospital. In support of his identity to open the accounts, ZHENDI provided his Chinese Passport with his photograph. Travel records for ZHENDI showed that he landed at Logan International Airport in Boston, Massachusetts from Beijing International Airport in Beijing, China on June 1, 2019. Four days later, on June 5, 2019, that is the same day that ZHENDI opened the checking and savings accounts at Bank A, he departed on a flight from Logan Airport to Beijing, China.

11. ZHENDI opened ZHENDI's Investment Account by providing his Chinese Passport to prove identity and a bank statement from his Bank A checking account.

12. A little over one month after ZHENDI's four-day trip to Boston from China during which he opened his accounts at Bank A, that is, on July 14, 2019, Co-Conspirators #1 and #2 arrived in the United States from China at Los Angeles International Airport. On July 30, 2019, Co-Conspirator #1 opened a checking account at Bank B, which is a United States bank that is FDIC-insured and has branches located in Massachusetts. Co-Conspirator #1 was the sole

4

authorized signor on the account. Co-Conspirator #1 provided a mailing address for a residence based in California and later in March 2021 changed that mailing address to one located at another residential address located in California. Information from CBP, however, showed that Co-Conspirator #1 actually resides in China and has not returned to the United States since July 2019. Co-Conspirators #1 and #2 stayed in the United States until one day after Co-Conspirator #1 opened the checking account at Bank B. That is, both departed together from Los Angeles International Airport to Xiamen, China on July 31, 2019.[2]

13.  Co-Conspirator #2 opened a checking account at Bank A in September 2021 in California and Co-Conspirator #2 is the sole authorized signor on the account.

14.  During the financial investigation, law enforcement identified a China-based company which utilized a website ("Steroid Website")[3] to advertise and facilitate the sale of different types of anabolic steroid raw material, that is, "steroids raws." The product listing page for the Steroid Website includes numerous types of Schedule III controlled substances. Co-Conspirator #1 was directly linked to the website via his/her email address and Co-Conspirator #2 made payments from his/her personal PayPal account that referenced fee payments made on behalf of the business.

15.  As described above, Co-Conspirators #1 and #2 each maintained personal financial accounts (PayPal and checking accounts) that they utilized to collect funds from various individuals throughout the United States. Since at least January 2021, Co-Conspirators #1 and #2

---

[2] On July 29, 2023, another investigator submitted an affidavit in connection with this case indicating that ZHENDI and Co-Conspirator #1 traveled in July 2019. This information was incorrect and in fact Co-Conspirator #1 and Co-Conspirator #2 traveled together to and from Los Angeles and China.

[3] Identity and name of this website is known to law enforcement, but because of ongoing nature of this investigation, it is not being named at this time.

have collected an excess of $1 million from various individuals, including individuals currently being investigators by the DEA for trafficking in steroids in Massachusetts and others residing outside of Massachusetts known to law enforcement to have drug related criminal histories and to be tied to ongoing steroids trafficking investigations. Known individuals tied to the re-distribution of steroids in the United States have made multiple payments to the accounts held by Co-Conspirator's #1 and #2. Moreover, based on my training and experience, I believe that the nature of the payments made into the accounts maintained by the co-conspirators is indicative of recurring customer sales. For example, many individuals have made dozens, and in some instances hundreds of separate payments into co-conspirator accounts. In one specific instance, one of the customer's payments explicitly revealed that the payments were for steroids by referencing the brand name of the steroids being purchased.

16. Disbursements from the checking account at Bank B of Co-Conspirator #1 has primarily come in one of three forms. The first is transfers to Co-Conspirator #2. The second is disbursements in the form of debit card purchases totaling over $50,000 at various USPS kiosks between December 2020 and December 2023, the majority of which were kiosks in California. Based upon my training and experience, coupled with information gathered by USPS and with names of the individuals that made payments into the accounts of Co-Conspirators #1 and #2, law enforcement believes that these payments were for the shipping costs of packages of steroids destined for customers also engaged in steroids trafficking.

17. The third form of disbursement of the checking account at Bank B of Co-Conspirator #1 is through transfers to ZHENDI's checking account. Additionally, the vast majority of funds from Co-Conspirator #2's checking account at Bank A go to ZHENDI's checking account. As described above, there is probable cause to believe that the funds gathered

into the accounts of Co-Conspirators #1 and #2 represent customer payments for the illicit sale of controlled steroid products. That is to say, the sole source of funding for ZHENDI's checking account maintained at Bank A are transfers from Co-Conspirators #1 and #2's checking accounts maintained for the sake of collecting drug proceeds from the Steroids Website.

18. As described above, the majority of funds collected in the financial accounts of Co-Conspirators #1 and #2 were regularly transferred over to a checking account controlled by ZHENDI. These transfers, which were rapid and frequent in nature, on average conducted on a weekly basis, totaled more than $1 million since 2021. The use of Co-Conspirator accounts to collect customer payments and then subsequently transfer the funds to a separate account, in this case ZHENDI's checking account, is a common money laundering technique known as layering, which aids in the money laundering efforts to conceal the nature and source of the proceeds.

19. Once the funds were transferred into ZHENDI's checking account, ZHENDI further layered the funds by making transfers from his checking account into his savings account and/or ZHENDI's Investment Account, and sometimes back into his checking account from the ZHENDI Investment Account. ZHENDI's checking account at Bank A is the sole source of funding for money maintained in ZHENDI's savings account at Bank A and ZHENDI's Investment Account. A significant portion of the funds collected by Co-conspirators #1 and #2 and transferred to ZHENDI have been retained by ZHENDI in his own accounts, however, ZHENDI has transferred approximately $490,145 to third parties, including $430,145 to an individual in China and $60,000 to a business entity bearing a New York address. Each of these transfers exceeded $10,000.

20. Based upon my training and experience, I believe the checking accounts of Co-Conspirators #1 and #2 and even the checking account of ZHENDI served as pass through

accounts which are designed specifically to conceal the source of the proceeds and the ownership of the money. I further believe that the money that entered ZHENDI's account served no legitimate business purpose because it was drug proceeds. I am also aware that ZHENDI transferred money to the ZHENDI Investment Account from his checking and/or savings accounts held at Bank A, and such transfers were in excess of $10,000, which is in violation of 18 U.S.C. § 1957.

21. On July 28, 2023, investigators learned that ZHENDI was scheduled on an international flight from Shanghai Pudong International Airport in Shanghai, China, that was scheduled to land in San Francisco International Airport on July 30, 2023 at 7:50 p.m. eastern standard time.

22. On July 29, 2023, this Court found probable cause to believe that the funds on deposit and assets held in five financial accounts, that is, the checking accounts held in the names of Co-Conspirators #1 and #2, the checking and savings account of ZHENDI, and the ZHENDI Investment Account, represented proceeds or property traceable to proceeds and facilitating property from the illegal sale of drugs and were subject to seizure and forfeiture. The total amount seized was $1,060,603.79 in drug proceeds. Of that amount, the money seized from bank/investment accounts to which ZHENDI was the sole signatory and therefore the only individual exercising control over the accounts was $845,398.57 in drug proceeds.

23. On July 30, 2023, ZHENDI arrived at San Francisco International Airport from China. He was on a one-way ticket. During inspection, investigators at the airport seized a laptop and a cell phone of ZHENDI's pending the issuance of federal search warrants. ZHENDI indicated to inspectors that he intended to remain in the United States, with the family with whom he traveled, for ten days. Instead, two days later and after investigators seized his electronic

devices and United States bank accounts, ZHENDI booked a return flight to China from San Francisco with a scheduled departure of 12:55 a.m. Pacific Standard Time on August 2, 2023.

## CONCLUSION

Based on the information set forth above, probable cause exists to believe that ZHENDI WANG knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown, to launder money, in violation of 18 U.S.C. § 1956(h).    I, Amie Le, hereby state under penalty of perjury that the contents of this affidavit are true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

*Amie N Le*

Amie Le, Task Force Officer
Drug Enforcement Administration

Sworn before me by telephone in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 this 2nd day of August 2023.

_____
Honorable Jennifer C. Boal
United States Magistrate Judge
District of Massachusetts